**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
Indianapolis Division

| | | |
|---|---|---|
| AMY NEWCOMER and<br>SCOTT NEWCOMER<br>2766 Duniven Circle<br>Amarillo, Texas 79109<br><br>Plaintiffs,<br><br>v.<br><br>ICE MILLER LLP<br>One American Square, Suite 2900<br>Indianapolis, Indiana 46282<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 1:26-cv-2393 |

## COMPLAINT

Plaintiffs Amy and Scott Newcomer, by their attorneys, Gass Turek LLC, state as follows for their Complaint against Defendant Ice Miller LLP:

## NATURE OF THE CASE

1. This case arises from the carelessness of law firm Ice Miller LLP in its representation of Plaintiffs Amy and Scott Newcomer, which caused the Newcomers to incur losses extending into the hundreds of thousands of dollars.

2. In rushing to settle a 2022 lawsuit filed against the Newcomers and their business, All American Association of Home Inspectors, Inc., Ice Miller ignored Supreme Court precedent regarding the preservation of federal jurisdiction after a case is settled.

3. Ice Miller's disregard of this clear precedent led it to fail to preserve federal jurisdiction over the Newcomers' settlement agreement, and when a dispute over the

settlement agreement arose, the Newcomers were forced to litigate the dispute in front of a hostile judge in Hamilton County, Indiana, rather than the federal forum in which the underlying lawsuit was litigated and settled.

4. Plaintiffs bring this action to recover (a) consequential damages arising out of Ice Miller's failure to preserve federal jurisdiction when resolving the underlying lawsuit filed in July 2022, (b) all attorneys' fees paid to Ice Miller pertaining to the resolution of the underlying lawsuit, and (c) any and all other damages available and provided for by Indiana law.

## PARTIES

5. Plaintiffs Amy and Scott Newcomer are a married couple domiciled in the State of Texas with a mailing address of 2766 Duniven Circle, Amarillo, Texas 79109.

6. Defendant Ice Miller LLP is a law firm organized as a limited liability partnership under the laws of the State of Indiana, with its principal office at One American Square, Suite 2900, Indianapolis, Indiana 46282. Ice Miller has no presence in Texas and none of its partners is domiciled in Texas.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because Plaintiffs and Defendant are citizens of different states and the amount in controversy exceeds $75,000, excluding interest and costs.

8. Venue is proper in the Southern District of Indiana pursuant to 28 U.S.C. § 1391(b)(1)–(2) because it is the judicial district in which Defendant resides and is the judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

## FACTS

### I. The Newcomers engage Ice Miller to represent them in a federal lawsuit.

9. On or about July 20, 2022, the Newcomers engaged Ice Miller to represent them in *Ultimo Global Holdings, LLC v. Scott Newcomer and Amy Newcomer*, No. 1:22-cv-01578-JPH-MG (S.D. Ind.) ("*Ultimo I*").

10. Attorney Adam Arceneaux, then the managing partner of Ice Miller's Indianapolis office, led the representation, assisted by Attorney Alexandria Hanauer Pittman. Mr. Arceneaux and Ms. Pittman both appeared for the Newcomers in *Ultimo I*.

11. At all relevant times, Mr. Arceneaux and Ms. Pittman acted as partners, employees, or agents of Ice Miller, and within the scope of Ice Miller's representation of the Newcomers. Ice Miller is liable for their acts and omissions.

12. Ice Miller represented the Newcomers in *Ultimo I* until December 21, 2023, at which point its representation of the Newcomers terminated.

### II. The Newcomers settle *Ultimo I* under the express condition that this Court would retain jurisdiction over any dispute relating to the settlement.

13. In July 2022, Ultimo Global Holdings, LLC ("Ultimo") sued the Newcomers for breach of contract in Hamilton Superior Court. On August 9, 2022, the action was removed to the Southern District of Indiana.

14. The dispute at issue in *Ultimo I* centered on an equity interest Ultimo held in the Newcomers' company, All American Association of Home Inspectors, Inc. ("All American"), pursuant to an equity agreement. Ultimo alleged that the Newcomers had breached that agreement by failing to satisfy distribution and financial reporting obligations owed to Ultimo.

15. On December 22, 2022, the parties and their counsel, including Mr. Arceneaux, attended an in-person settlement conference before Magistrate Judge Mario Garcia and reached a settlement.

16. At the end of the settlement conference, Magistrate Judge Garcia read the terms of the settlement (the "Term Sheet") into the record. Magistrate Judge Garcia then asked the parties and their counsel to confirm on the record that the terms were accurate and that the parties had entered into a binding settlement agreement, which the parties affirmed.

17. Among other things, the Term Sheet provided that

a. The Newcomers would pay Ultimo the greater of 20% of the net proceeds of a sale of All American within three years, or $620,000, payable within 30 months of the settlement's effective date (Term 1);

b. The parties would dismiss the action with prejudice within seven days of executing the agreement (Term 9); and

c. Each party would bear its own attorneys' fees and costs (Term 12).

18. Term 11 provided that "[a]ny dispute arising out of or relating to the settlement agreement shall be governed by the laws of the State of Indiana. **The parties agree the District Court for the Southern District of Indiana shall be exclusive venue for resolving any dispute arising out of or relating to the settlement**" (emphasis added).

19. Through Term 11, the Newcomers bargained for an exclusive federal forum in the United States District Court for the Southern District of Indiana to resolve disputes arising from the settlement.

20. The Term Sheet otherwise contained no provision keeping the court's jurisdiction to enforce the settlement after dismissal.

## III. Ultimo unsuccessfully disputes the enforceability of the settlement agreement.

21. Following the December 2022 settlement conference, Ultimo's new counsel asserted that there had been no "meeting of the minds" on the material terms and that the agreement was not enforceable, which the Newcomers (via Ice Miller) disputed.

22. Ice Miller moved on the Newcomers' behalf to enforce the settlement on January 30, 2023.

23. On August 18, 2023, Magistrate Judge Garcia recommended in writing that the District Court declare that the Term Sheet terms "were entered into knowingly and voluntarily, are sufficiently definite, and fully enforceable."

24. The District Court subsequently adopted Magistrate Judge Garcia's recommendation.

25. On October 24, 2023, Magistrate Judge Garcia held a telephone status conference with counsel, including Mr. Arceneaux, regarding the effective date of the settlement agreement.

## IV. Ice Miller approves a dismissal that surrenders federal jurisdiction.

26. On October 26, 2023, at 11:49 a.m., Ultimo's counsel emailed Mr. Arceneaux a proposed joint stipulation of dismissal, stating: "We'll file this stipulation of dismissal upon your approval."

27. At 1:29 p.m., Mr. Arceneaux replied: "Yes, please file the stipulation."

28. Ice Miller proposed no changes to the stipulation. It did not ask for language keeping the court's jurisdiction to enforce the settlement or incorporating the settlement's terms.

29. Before approving the stipulation, Ice Miller did not explain the consequences of the stipulation to the Newcomers or get their informed consent to dismiss on terms that would waive federal jurisdiction.

30. At 1:44 p.m., Ultimo's counsel responded that: "Please note that based on the position taken by Newcomers and the Court, the agreement was effective as of December 22, 2022, so full payment is overdue."

31. That same day, the parties filed a Joint Stipulation of Dismissal with Prejudice under Federal Rule of Civil Procedure 41(a)(1)(A)(ii) (Dkt. 55), signed "/s/Adam Arceneaux (*with consent*)" for Ice Miller as "Attorneys for Defendants" (emphasis added). Mr. Arceneaux did not have the Newcomers' consent.

32. The stipulation states that the parties "stipulate and agree to the dismissal, with prejudice, of the above-captioned cause of action in its entirety, including all claims that were brought or that could have been brought as to all parties, and each party shall bear its own fees, costs, and expenses."

33. The stipulation did not discuss the settlement, state that the federal court would retain jurisdiction to enforce the settlement, or incorporate the settlement's terms.

34. On October 27, 2023, Mr. Arceneaux wrote to Ultimo's counsel that Ice Miller "respectfully disagree[d]" with Ultimo's effective-date position, calling it "the opposite of what

Judge Garcia stated, and what you acknowledged, during the telephonic status conference on October 24, 2023."

35. When Ice Miller consented to dismissal, it knew a dispute over the settlement's performance had already begun.

36. On October 31, 2023, the court acknowledged the Joint Stipulation of Dismissal with Prejudice and closed the case. Neither the stipulation nor the court's acknowledgement reserved jurisdiction to enforce the settlement or incorporated its terms.

**V. Ice Miller withdraws after forfeiting federal jurisdiction.**

37. On December 13, 2023, Ultimo moved in *Ultimo I* to enforce the settlement, alleging that the Newcomers had failed to make timely payments.

38. On December 20, 2023, Ice Miller moved to withdraw its appearances. The court then ordered Ultimo to either withdraw its motion or show why the motion should not be denied on jurisdictional grounds.

39. On December 21, 2023, Mr. Arceneaux emailed the Newcomers: "In sum, the Court's order states that once this civil action was dismissed, the Court no longer retained jurisdiction . . . All of which means that Ultimo will likely file a new lawsuit against you in an effort to collect on the settlement agreement. This will conclude our engagement to represent you."

40. Ice Miller failed to tell the Newcomers that (a) the court lacked jurisdiction because the stipulation Ice Miller approved did not keep it; (b) a retention provision had been available; (c) any remedy might still be available; or (d) the Newcomers might have a claim against Ice Miller.

41. Ultimo withdrew its motion to enforce the settlement agreement in this Court on January 10, 2024.

## VI. Ultimo sues the Newcomers in Indiana state court and Ice Miller's negligence prevents the Newcomers from successfully removing the case to federal court.

42. As Mr. Arceneaux predicted, on July 2, 2024, Ultimo sued the Newcomers in Hamilton Superior Court, Case No. 29D02-2407-PL-007295, alleging breach of the settlement for nonpayment.

43. On September 5, 2024, the Newcomers filed a motion to enforce Term 11 of the Term Sheet that had been read into the record in *Ultimo I*. In November 2024, the state court denied the motion because the amount in controversy, per the court, did not meet the threshold to trigger federal jurisdiction.

44. The Newcomers have since been forced to litigate disputes over the settlement in a forum the negotiated settlement terms excluded. This litigation has resulted in fee awards against the Newcomers (despite the fact that Term 12 prohibits such awards) and a March 2, 2026 order purporting to enter a partial judgment of $729,014.17 and sanctions of $2,000 per day, which the Newcomers contend is void.

45. The state court litigation remains ongoing, and the Newcomers continue to incur attorneys' fees, costs, expenses, and other damages arising from the loss of the bargained-for federal forum.

46. The Newcomers twice attempted to remove the state court action to this Court but were thwarted both times by Ice Miller's failure to preserve federal jurisdiction.

## VII. The procedure to preserve federal jurisdiction after settlement is clear, but Ice Miller inexplicably failed to follow it.

47. A federal court that dismisses an action does not keep jurisdiction to enforce the parties' settlement unless the dismissal order expressly keeps jurisdiction or incorporates the settlement's terms. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381–82 (1994). A forum-selection clause in the settlement itself does not do this.

48. A reasonably prudent attorney representing a client whose settlement makes a federal court the exclusive forum for disputes knows that keeping that forum requires either a dismissal order that keeps jurisdiction or incorporates the settlement, or a dismissal under Rule 41(a)(2) by a court order containing that provision.

49. Ice Miller had several opportunities to preserve federal jurisdiction and took none of them. Ice Miller failed to preserve federal jurisdiction when the Term Sheet was read into the record on December 22, 2022; when the written settlement agreement was drafted; during the October 24, 2023 status conference; and when it reviewed and approved the stipulation of dismissal on October 26, 2023.

50. Ensuring the United States District Court for the Southern District of Indiana preserved jurisdiction over any disputes arising from the settlement was necessary to carry out the requirements of Term 11 and was consistent with the requirement from Term 9 that the matter be dismissed with prejudice.

51. Instead, two months after winning a ruling that the settlement was fully enforceable, and while knowing that Ultimo claimed the Newcomers were already in default, Ice Miller approved and signed a stipulation that failed to preserve the court's ancillary jurisdiction.

52. Ancillary jurisdiction to enforce a settlement does not depend on diversity of citizenship or the amount in controversy. Had Ice Miller preserved it, the Southern District of Indiana would have remained available to resolve Ultimo's claims, as Term 11 required, whatever the amount in dispute. The amount in dispute is the very ground on which the state court refused to enforce Term 11.

53. Because of Ice Miller's failure to preserve ancillary jurisdiction, the Southern District of Indiana lacked jurisdiction to enforce the settlement when Ultimo alleged breach, and the Newcomers lost the exclusive federal forum for which they had bargained in Term 11.

54. The Newcomers are not attorneys. They did not know, and could not reasonably have known, that Ice Miller's stipulation caused the loss of the federal forum until January 2025 at the earliest, when they were advised by subsequent counsel that this Court had not retained jurisdiction over the settlement in *Ultimo I* because of Ice Miller's failure to heed the requirements of *Kokkonen*.

**FIRST CAUSE OF ACTION**
**LEGAL MALPRACTICE (PROFESSIONAL NEGLIGENCE)**

55. Plaintiffs reallege and incorporate by reference the allegations in the preceding paragraphs.

56. From July 20, 2022 until December 2023, when Ice Miller withdrew from representation of the Newcomers, an attorney-client relationship existed between Ice Miller and the Newcomers.

57. Ice Miller owed the Newcomers a duty to use the ordinary skill, care, and knowledge of a reasonably prudent attorney in similar circumstances.

58. Ice Miller's duty to the Newcomers included a duty to preserve the Newcomers' ability to enforce the settlement in the forum they had bargained for, as reflected by Term 11 from the Term Sheet the court read into the record. It also included informing the Newcomers of the material consequences of the dismissal Ice Miller approved without consulting them.

59. Ice Miller breached its duty to the Newcomers by:

a. Approving and signing a stipulation of dismissal that neither retained the court's jurisdiction to enforce the settlement nor incorporated the settlement's terms;

b. Failing to seek a Rule 41(a)(2) dismissal order retaining the court's jurisdiction to enforce the settlement;

c. Failing to raise retention of jurisdiction at the October 24, 2023 status conference or at any other time before dismissal;

d. Consenting to dismissal without advising the Newcomers that it would forfeit the federal forum Term 11 guaranteed, and without obtaining their informed consent; and

e. After the court ruled it lacked jurisdiction to enforce the settlement, failing to tell the Newcomers that the stipulation Ice Miller approved caused that result, failing to advise them of any available remedy, and withdrawing instead.

60. Ice Miller's breaches proximately and directly caused the Newcomers' loss of the federal forum. Ancillary jurisdiction to enforce a settlement does not depend on diversity of citizenship or the amount in controversy.

61. Had Ice Miller preserved federal jurisdiction, Ultimo's claims for breach of the settlement would have been heard in the Southern District of Indiana, as Term 11 required. Instead, the claims have been litigated in Hamilton Superior Court, which refused to enforce Term 11 on (improperly determined) amount-in-controversy grounds.

62. As a direct and proximate result, the Newcomers have suffered damages in an amount to be proven at trial exceeding $75,000, including:

a. Attorneys' fees and costs paid to successor counsel to litigate in a forum the settlement excluded;

b. Attorneys' fees and costs awarded to Ultimo against the Newcomers in spite of the fact that Term 12 of the Term Sheet precluded any such awards;

c. Liabilities imposed against the Newcomers in the ongoing Indiana state court action, including any liability under the March 2, 2026 order, which the Newcomers contend is void, together with any additional liabilities, fees, costs, sanctions, or judgments that have accrued or will accrue as a result of that action; and

d. Other losses caused by the loss of the bargained-for federal forum.

**SECOND CAUSE OF ACTION**
**BREACH OF FIDUCIARY DUTY**

63. Plaintiffs reallege and incorporate by reference the allegations in the preceding paragraphs.

64. As the Newcomers' attorneys, Ice Miller owed them fiduciary duties of loyalty and candor. Those duties included a duty to disclose material facts about the representation, including facts about Ice Miller's own conduct that affected the Newcomers' interests.

65. By December 21, 2023, Ice Miller knew that the court had concluded it lacked jurisdiction to enforce the settlement after dismissal. It also knew, or should have known, that the lack of jurisdiction resulted from the stipulation Ice Miller had approved and signed.

66. Ice Miller breached its fiduciary duties when it ended the attorney-client relationship without disclosing those facts. Its December 21, 2023 email attributed the loss of jurisdiction to the bare fact of dismissal. It did not disclose Ice Miller's role, that a retention provision had been available, any remedy then available, or that the Newcomers might have a claim against Ice Miller.

67. In withholding those facts, Ice Miller put its own interest in avoiding responsibility for its error ahead of the Newcomers' interest in understanding and protecting their rights.

68. As a direct and proximate result, the Newcomers were harmed. They were deprived of information needed to evaluate and pursue available relief concerning the dismissal, protect their rights concerning the loss of the federal forum, and timely discover and investigate their claims against Ice Miller.

69. The Newcomers are entitled to damages and to forfeiture or disgorgement of the attorneys' fees they paid Ice Miller for the *Ultimo I* representation, in an amount to be determined at trial, including the partial judgment of $729,014.17 and sanctions of $2,000 per day, neither of which would have been ordered but for Ice Miller's breaches.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Amy and Scott Newcomer respectfully request that the Court enter judgment in their favor against Defendant Ice Miller LLP, and award Plaintiffs:

A. Compensatory damages in an amount to be determined at trial;

B. Disgorgement of the attorneys' fees paid to Ice Miller;

C. Plaintiffs' attorneys' fees and costs incurred in prosecuting this action;

D. Pre-judgment and post-judgment interest; and

E. All other relief this Court deems just and equitable.

**PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Dated this 5th day of November 2026.

**GASS TUREK LLC**
Daniel A. Manna
Isaiah Z. Simons
241 N. Broadway, Suite 300
Milwaukee, Wisconsin 53202
(414) 223-3300 – phone
(414) 224-6116 – fax
manna@gassturek.com
simons@gassturek.com

*Attorneys for Plaintiffs Amy & Scott Newcomer*